(110 So. 901)

**SOVEREIGN CAMP, W. O. W., v. TUCKER.**
**(6 Div. 409.)**

(Supreme Court of Alabama. Nov. 4, 1926.
Rehearing Denied Jan. 22, 1927.)

1. **Insurance** ☞819(3)—**Evidence held to show that beneficial association as matter of law did not waive requirement that insured procure health certificate for reinstatement policy.**

Evidence *held* to show, as matter of law, that beneficial association did not waive stipulated condition that insured should procure health certificate before reinstatement policy became valid.

2. **Insurance** ☞763—**Beneficial association's failure to return old policy could not impose liability on reinstatement policy.**

Failure of beneficial association to return old policy, which was functus officio, could not impose liability on new reinstatement policy by estoppel or otherwise.

3. **Evidence** ☞471(2)—**Testimony that deceased was continuously member of beneficial association held inadmissible as conclusion.**

In action against beneficial association on benefit policy, plaintiff's testimony that deceased was continuously member of defendant association *held* inadmissible as conclusion, where such question was contested issue.

Appeal from Circuit Court, Jefferson County; Joe C. Hail, Judge.

Action by Fannie Tucker against the Sovereign Camp of the Woodmen of the World. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Plaintiff sues defendant on a benefit policy, alleged to have been issued to her husband Louis Tucker, in November, 1921.

Count A, upon which the case went to the jury, alleges, substantially, that Louis Tucker had been a member of the defendant association for more than two years next before his death on June 8, 1922, and that he died while he was in good standing as such member, and while the policy was in force; that the policy sued on was issued by defendant to Louis Tucker, as aforesaid, in lieu of another policy issued to him by defendant on November 10, 1908; and that plaintiff is the beneficiary in, and owns, the policy sued on.

Defendant pleaded the general issue and seven special pleas. These pleas set up several provisions of the constitution and laws of the defendant association, as part of the terms of the policy sued on. These are, in substance: (1) If a member fails to pay his monthly dues on or before the last day of each month, he shall stand suspended, and during such suspension his beneficiary certificate shall be void. (2) No suspended member shall be reinstated whose health is at the time impaired, or becomes impaired within thirty days after such attempted reinstatement. (3) Section 66:

"(a) Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health at the time and continue in good health for thirty days thereafter, and not addicted to the excessive use of intoxicants or narcotics, he shall be reinstated and his beneficiary certificate again become valid. (b) After the expiration of ten days and within three months from date of suspension of a suspended member, to reinstate he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed that he is in good health at the time and will continue in good health for thirty days thereafter, and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue. (c) Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time and continue in good health for thirty days thereafter, and if any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above conditions."

(4) Section 67:

"Should a member be suspended more than three and less than six months, for any cause, in order to be restored to beneficiary membership, it shall be necessary for him to present a certificate of good health from the camp physician, be balloted for, and must receive a majority vote of the members present; he shall pay four monthly installments of assessments and dues to the clerk of the camp. Three installments of assessments shall be forwarded immediately by the camp clerk with the certificate of good health to the Sovereign Clerk, the fourth shall be placed to the credit of the member as payment for the current month, and upon the receipt and acceptance of said three monthly installments of assessments by the Sovereign Clerk, if the member shall remain in good health for the next thirty days following, his beneficiary certificate shall be in full force and effect."

Plea 2 alleges that Tucker was suspended on the last day of June, 1921, for nonpayment of the current June dues, and that the policy became and remained void, and that Tucker was never thereafter reinstated in membership.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Plea 3 shows that for the stated reason Tucker remained suspended for more than three months; that he thereafter attempted to be reinstated, and paid the local clerk a sum of money for his arrears, but did not become reinstated, for that he never presented a certificate of good health from the camp physician, and was not balloted on by the members of his camp.

Plea 4 contains the same allegations, but avers the invalidity of the reinstatement, and of the policy, for that the Sovereign Camp did not accept the payment of arrears because Tucker failed to present a good health certificate as required.

Plea 5, on the same allegations, avers the invalidity of the reinstatement and of the policy, because Tucker's health was at that time impaired, or became impaired within thirty days thereafter.

Plea 6 is the same as plea 5 with the additional averment that Tucker died in June, 1922, without ever having recovered his health.

Pleas 3, 4, 5, and 6 were amended by adding the following:

"That said policy was issued or written out at its home office in Omaha, Neb., and sent out to the clerk of the local camp for delivery by said clerk after all the conditions of the constitution and by-laws above set out had been complied with, but said clerk, without authority, power, or right to bind defendant, delivered said policy to said Tucker. But said Tucker did not comply with the conditions for reinstatement, and the money which had been paid to the local camp, and which had not been accepted by the Sovereign Clerk was returned to plaintiff and she received said money, wherefore said policy is null and void."

Plea 3 was further amended by adding a warranty contained in the policy, that the assured was in good health at the time, and had not been sick or injured since the date of his application, and that the laws of the society had been complied with; and it recited specifically the alleged breaches of those warranties.

Plea 2 was further amended by setting up a provision of the policy that liability thereon should not begin until the application was accepted by a sovereign physician, and the certificate issued to the assured while in good health.

C. H. Roquemore, of Montgomery, for appellant.

Counsel argues the questions raised, but without citing authorities.

Edgar Allen and H. M. Abercrombie, both of Birmingham, for appellee.

The Supreme Camp may waive conditions enacted for the society's benefit. W. O. W. v. Eastis, 210 Ala. 29, 96 So. 866; W. O. W. v. Alford, 206 Ala. 18, 89 So. 528. In case of reinstatement, the original contract was continued as if no cause of forfeiture had accrued, and a waiver of forfeiture did not create a new contract. Sov. Camp v. Adams, 204 Ala. 667, 86 So. 737. Acceptance of past-due assessments without demanding certificate of good health is a waiver of such certificate. Yarbrough v. W. O. W., 210 Ala. 188, 97 So. 654. Benefit certificate at the time of death is prima facie proof of good standing. W. O. W. v. Bass, 207 Ala. 558, 93 So. 537.

SOMERVILLE, J. The action is on a benefit policy alleged to have been issued by the defendant society to the plaintiff's husband, Louis Tucker.

Defendant denies liability on the ground that Tucker had been suspended from membership for the nonpayment of dues for June, 1921, and so remained for more than three months, and that the policy sued on as a reinstatement policy never became effective for the reasons: (1) That the assured never furnished to the society a certificate of good health from the camp physician; (2) that he was not balloted on for reinstatement by the members of his camp; and (3) that he was not at that time in good health, or that his health became impaired within thirty days thereafter, he having died of tuberculosis in June, 1922, without recovering his health after June, 1921.

Defendant alleges also that the money paid to its local clerk as reinstatement dues was repaid to this plaintiff.

Plaintiff denies that the assured was in bad health, as charged, and seeks to avoid the effect of his failure to conform to the specified requirements of the laws of the society and the conditions of the policy, by alleging that the defendant society accepted the money paid as dues for reinstatement, and issued and delivered the policy to the assured with knowledge of his failure to first conform to the requirements specified, and therefore waived the conditions relied upon by defendant.

[1] Although the pleadings are voluminous, a proper decision of the case on its merits rests upon a single question of fact: Did defendant, or its authorized agent, deliver the reinstatement policy to the assured in such manner, and under such circumstances, as to effectively waive the stipulated conditions to its valid operation?

It appears without dispute that the defendant society, upon receipt of the old lapsed policy from the local clerk, N. A. L. Jones, sent a new policy to Jones to be filled out by him and delivered to Tucker, in accordance with pertinent regulations, it must be presumed. Jones testified:

"After I filled out the policy and put the seal on it, he [Tucker] asked me to write his name. I told him I could not do that. He said he was shaky. Then I suggested his wife write, and she

refused, and he wrote it himself. I told him as soon as I made return they were going to require a health certificate, but he talked like he was going to give a health certificate, but he said he didn't know whether our camp physician would give it—there was a little difference between them, and he didn't know whether he would sign a certificate. I told him the policy would not be effective until he gave a health certificate. He knew that. I told him they would call on him for a health certificate. I told him they would not accept his money unless he gave a health certificate, and he didn't give it."

This witness also testified that the money paid by Tucker was not for reinstatement, but was for dues in advance on the new policy, and that he did not send the money to headquarters.

This testimony by Jones was not disputed, nor in any way contradicted or impaired, and, if believed, it shows conclusively that the essential requirement of a health certificate before the policy could become operative, was not only not waived, but was expressly insisted upon at the time the policy was handed to Tucker.

Upon this predicate, defendant was entitled to the general affirmative charge, as duly requested, and its refusal was error to reverse the judgment.

[2] The failure of the defendant, the Sovereign Camp, to return the old policy, which was functus officio, was without legal significance, and could not impose liability on the new policy, by estoppel or otherwise.

[3] We do not consider other questions not affecting the merits of the case, other than to observe that the plaintiff should not have been allowed to testify that her husband, Louis Tucker, was continuously a member of the local camp until his death, a contested issue, involving a legal conclusion, which the witness was not qualified to declare.

Let the judgment be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.